```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

ROBIN L. HINKLE,

      Plaintiff,

v.                                 Civil Action No. 2:15-13856

CASEY JOE MATTHEWS, TIMOTHY
MAY, CONNIE MAY, SANTANDER
CONSUMER, USA, INC., SAFE-
GUARD PRODUCTS INTERNATIONAL,
LLC, and JOHNNY HINKLE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is a motion for partial dismissal by defendant Safe-Guard Products International, LLC, ("Safe-Guard") filed November 23, 2015.

### I. Factual and Procedural History

Plaintiff Robin L. Hinkle ("Hinkle") is a resident of Delbarton, Mingo County, West Virginia.[1]  Defendant Safe-Guard is a limited liability company organized in Georgia doing business in West Virginia.  Safe-Guard offered Guaranteed Auto Protection ("GAP") insurance to vehicle purchasers in West Virginia.  In

---

[1] The facts recited are drawn from the allegations of the operative pleading and are accepted as true for purposes of the motion to dismiss.

the event of an accident resulting in the total loss of a vehicle, GAP insurance covers any difference between the outstanding balance owed by the purchaser and the amount paid by the purchaser's primary insurer toward the loss.

In July 2006, Hinkle purchased a vehicle and entered into a GAP insurance policy with Safe-Guard. Hinkle paid $495 upfront for the policy, which constituted the only payment due to Safe-Guard. On June 1, 2011, Hinkle was involved in an automobile accident resulting in the total loss of her vehicle. At the time of the accident, Hinkle owed a balance of $11,983.81 on the vehicle. After payment by her primary insurer, which was calculated based on the actual cash value of the vehicle, Hinkle had an outstanding debt of $4,698.81. By letter dated July 21, 2011, Safe-Guard denied Hinkle's claim under her GAP policy and refused to cover the remaining debt.

On July 20, 2012, Hinkle instituted this action in the Circuit Court of Mingo County. In the state courts, the parties extensively litigated the issue of whether the state's insurance laws apply to GAP insurance policies. Safe-Guard argued, based on its interpretation of a memorandum issued by the West Virginia Insurance Commissioner, that GAP policies did not constitute insurance under the state's insurance laws. On March 11, 2015, the West Virginia Supreme Court of Appeals found as a

2

matter of first impression that Safe-Guard's GAP insurance plans are insurance under the laws of West Virginia. <u>State ex rel. Safe-Guard Prods. Int'l, LLC v. Thompson</u>, 235 W. Va. 197, 772 S.E.2d 603 (2015).

Following the ruling by the Supreme Court of Appeals, on May 28, 2015, Hinkle moved to amend her complaint to include class action claims against Safe-Guard under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code ch. 46A, on behalf of all purchasers of GAP insurance in West Virginia. In response, Safe-Guard removed the action to this court pursuant to the removal provision of the Class Action Fairness Act, 28 U.S.C. § 1453. In the Amended Class Action Complaint ("operative pleading"), Hinkle alleges that Safe-Guard violated various provisions of the WVCCPA by engaging in the sale of insurance in West Virginia without a license. While the WVCCPA does not explicitly prohibit the unlicensed sale of insurance, Hinkle argues that Safe-Guard's conduct was governed by the statute's provisions prohibiting unfair or deceptive trade practices and unfair debt collection practices. Hinkle seeks, <u>inter alia</u>, compensatory damages, a refund of premiums paid, punitive damages, and civil penalties for each violation of the WVCCPA.

In support of its motion for dismissal of Hinkle's claims insofar as they are based on the WVCCPA, Safe-Guard argues that any claim against it under the WVCCPA fails as a matter of law because its alleged conduct, as well as the sale of insurance generally, fall outside the ambit of the WVCCPA.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

4

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). Factual allegations are to be distinguished from legal conclusions, which the court need not accept as true. Iqbal, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## III. Discussion

Safe-Guard contends that Hinkle's WVCCPA claims should be dismissed because they relate to the sale of insurance, and such sales are not covered by the statute. Indeed, the WVCCPA

explicitly exempts insurance sales: the statute "does not apply to . . . [t]he sale of insurance by an insurer, except as otherwise provided . . ." W. Va. Code § 46A-1-105(a)(2). While Hinkle recognizes that the WVCCPA generally excludes insurance sales, she relies on the proviso that insurers are subject to the WVCCPA where "otherwise provided," identifying several provisions of the WVCCPA which purportedly cover Safe-Guard's sale of GAP insurance. First, Hinkle argues that Safe-Guard is a "debt collector" subject to the statute's prohibition of unfair debt collection practices. See W. Va. Code § 46A-2-127. Second, she argues that Article 6 of the WVCCPA, which contains a number of general consumer protections, covers the sale of insurance. Third, she argues that Safe-Guard's conduct violated West Virginia's insurance laws, and that the WVCCPA allows a plaintiff to recover for violations of other state statutes. After a careful review of the provisions cited by Hinkle, the court concludes that none of the WVCCPA provisions relied upon are applicable to the sale of insurance.

    A.    Debt Collection Provisions

The WVCCPA provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims . . . ." W. Va.

Code § 46A-2-127. Understanding the scope of this brief provision requires review of several statutory definitions:

> "Debt collection" is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code § 46A-2-122(c).
>
> A "claim" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." W. Va. Code § 46A-2-122(b).
>
> "Services" are defined as including "(a) Work, labor and other personal services; (b) privileges with respect to transportation, use of vehicles, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like; and (c) insurance." W. Va. Code § 46A-1-102(47).

Hinkle argues that Safe-Guard was engaged in "debt collection" as defined by the statute to the extent it sought to collect on a claim for services, namely, the insurance service it offered as part of the GAP contract. This argument has superficial appeal inasmuch as the statutory definition of "services" includes insurance. However, the court does not construe the debt collection provisions as broadly as Hinkle suggests. First, while the debt collection provision arguably applies to attempts to collect on claims resulting from insurance transactions, there is no "claim" at issue in this case on the facts

7

alleged.  Hinkle paid upfront for her GAP insurance coverage, and at no point was Safe-Guard the holder of "any obligation or alleged obligation . . . to pay money arising out of [the] transaction."

While the West Virginia Supreme Court of Appeals has not addressed whether insurance contracts with a single upfront premium payment involve the collection of a "claim" under the WVCCPA, it has acknowledged that the definition of "claim" in the statute is "essentially identical" to the definition of "debt" in the analogous federal Fair Debt Collection Practices Act.  <u>Fleet v. Webber Springs Owners Ass'n, Inc.</u>, 235 W. Va. 184, 193 (2015) (citing 15 U.S.C. § 1692a(5)).  Indeed, the two definitions are in virtually verbatim language.  It is held that "the type of transaction which may give rise to a 'debt' as defined in the FDCPA, is . . . one involving the offer or extension of credit to a consumer.  Specifically it is a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' <u>and to defer payment</u>."  <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1168-69 (3rd Cir. 1987) (quoted in <u>Mabe v. G.C. Services Ltd. Partnership</u>, 32 F.3d 86, 88 (4th Cir. 1994)) (emphasis

8

added).  There can be no "debt" under the FDCPA without a deferral of payment.  The court sees no reason that a "claim" under the WVCCPA should not also require a deferral of payment.  Consequently, Safe-Guard has not been shown to have engaged in debt collection.

    B.   Article 6 of the WVCCPA

The remainder of Hinkle's WVCCPA claims are based on Article 6 of the statute, which includes a broad range of consumer protections including protections for non-consumer credit transactions.  <u>See</u> § 46A-6-101 <u>et</u> <u>seq</u>.  In particular, Hinkle relies on W. Va. Code § 46A-6-104, which prohibits unfair or deceptive acts or practices in trade or commerce.  Safe-Guard argues that nothing in that section makes it applicable to Safe-Guard's sale of insurance given the WVCCPA's general exclusion of insurance sales.

Hinkle supports her assertion that Article 6 of the WVCCPA applies to the sale of insurance with two arguments.  First, Hinkle contends that Article 6 contains its own list of exempted transactions, which does not include the sale of insurance.  <u>See</u> W. Va. Code § 46A-6-105.  She argues that if the Legislature had intended to exclude insurance sales from Article 6, it would have listed insurance among these exemptions.  Not

so. Section 46A-6-105 merely adds one additional exclusion, applicable only in Article 6, to those exclusions that apply throughout Chapter 46A as specified in § 46A-1-105. That one additional exclusion under Article 6 simply covers the publication by news media of certain advertisements. The Chapter 46A exclusions remain intact.

Second, Hinkle contends that Article 6 prohibits unfair or deceptive acts in the sale of insurance because it provides for recovery by any person who purchases a "service" and is harmed as a result of a violation of the WVCCPA. See § 46A-6-106(a). "Services" is defined to include insurance. W. Va. Code § 46A-1-102(47).

The court concludes that the sale of insurance is not covered by the general consumer protections in Article 6. As earlier noted, the WVCCPA provides that "This chapter [46A] does not apply to . . . [t]he sale of insurance by an insurer, except as otherwise provided in this chapter." § 46A-1-105(a)(2). While Article 6 does cover "services," thereby making use of a term that is defined to include a broad range of transactions including insurance, it does not sweep sales of insurance into the Article where it is not otherwise provided for. Given the broad use of the word "services" throughout the statute, adopting Hinkle's reading would render the explicit exclusion of

10

insurance sales from the statute meaningless.  Notably, other sections of the WVCCPA expressly provide for their applicability to the sale of insurance, but those sections do not provide a basis for Hinkle's claims.  See, e.g., W. Va. Code § 46A-3-109 (prescribing rules related to insurance purchases associated with charges additional to finance charges); W. Va. Code § 46A-3-109a (prescribing rules related to the purchase of collateral insurance).[2]

## IV. Conclusion

It is, accordingly, ORDERED that Safe-Guard's motion for dismissal with regard to Hinkle's WVCCPA claims be, and it hereby is, granted.

The parties are scheduled to appear before the court on July 21 for a hearing on the pending motion by Hinkle for class certification.  Because the motion for class certification is premised on Hinkle's WVCCPA claims, it appears at this

---

[2] The court also considers that subsequent to the passage of the WVCCPA, the West Virginia Legislature has added a number of consumer protection provisions to Title 33 of the West Virginia Code, which covers insurance transactions in the state.  In 1997, the Legislature enacted the Insurance Sales Consumer Protection Act as Article 11A of that Title; in 2001, the Legislature added the Unauthorized Insurance Act as Article 44.  While these statutes did not alter the scope of the earlier-enacted WVCCPA, their passage suggests that the Legislature saw a need for consumer protections covering the sale of insurance.

juncture that the hearing has been rendered moot by the dismissal of those claims. Accordingly, it is ORDERED that in lieu of the class certification hearing, a status conference in this action shall be held on July 21 at 10:30 a.m. in the court's chambers.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: July 19, 2016

John T. Copenhaver, Jr.
United States District Judge