**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**ROBIN L. HINKLE**, individually, and on behalf
of those similarly situated,

       *Plaintiff*,

v.

                                            Civil Action No. 2:15-cv-13856
                                            Hon. John T. Copenhaver, Jr.

**CASEY JOE MATTHEWS**; **TIMOTHY MAY**
and **CONNIE MAY**, husband and wife;
**SANTANDER CONSUMER, USA, INC.**, an
Illinois corporation; **SAFE-GUARD PRODUCTS
INTERNATIONAL, LLC**, a Georgia limited
liability company; and **JOHNNY HINKLE**,

       *Defendants*.

**PROPOSED STATEMENT OF FACTS AND PROCEDURAL HISTORY
IN AID OF CERTIFICATION OF QUESTION TO THE
<u>SUPREME COURT OF APPEALS OF WEST VIRGINIA</u>**

      Plaintiff Robin L. Hinkle and Defendant Safe-Guard Products International, LLC ("Safe-Guard"), by their respective counsel, submit this proposed statement of facts and procedural history to assist the Court in the event that it decides to certify one or more questions of law to the Supreme Court of Appeals of West Virginia:

      1.      On July 14, 2006, Ms. Hinkle and her former husband, Johnny Hinkle, purchased a 2006 Monte Carlo from C&O Motors, a dealership in St. Albans, West Virginia.

      2.      At the time of purchase, the salesman for the dealership, on behalf of Safe-Guard, asked the Hinkles if they wanted to purchase Guaranteed Asset Protection ("GAP") insurance.

3.      The Hinkles were told that the GAP Insurance would relieve them of payments owed on the vehicle if it were declared a total loss from an accident, and more was owed than the value assigned to the vehicle at the time it was totaled.

4.      The Hinkles agreed to purchase the GAP Insurance at a one-time cost of $495.00.

5.      The Hinkles financed $19,718.20, with payments scheduled for seventy-two months at an interest rate of 14.25%.  The amount financed comprised the vehicle price of $20,552.70, plus additional charges totaling $565.50, less the Hinkles' net down payment of $1,400.00, the latter consisting of $500.00 in cash and a $2,000.00 factory rebate, collectively credited against the $1,100.00 balance owed on their trade-in vehicle.  The $565.50 in additional charges, listed on the automobile loan paperwork as "Total Other Charges/Amount Pd. To Others[s]," included $20.50 in filing fees, a documentary fee of $50.00, and the GAP insurance premium of $495.00.  *See Retail Installment Contract and Security Agreement*, at 2.  C&O Motors made a single, lump sum payment to Safe-Guard for the GAP Addendum.  The monthly loan obligation was calculated at $411.38, with payments beginning in August 2006.

6.      The Hinkles missed entire payments, made some partial payments, had some payments deferred, and incurred late fees during the term of the automobile loan.

7.      Ms. Hinkle was involved in an automobile accident on June 1, 2011, approximately sixty months into the seventy-two-month loan term.  The accident resulted in her vehicle being declared a total loss by her automobile insurer, State Farm.  At the time of the accident, the balance on the Hinkles' loan was $11,983.81, including late fees.

8.      State Farm paid $7,285.00, the assessed cash value of the car, to the vehicle's finance note holder.  Consequently, Ms. Hinkle was left owing approximately $4,698.81 on the loan.

9.     Ms. Hinkle contacted Safe-Guard and submitted a claim under the GAP Insurance to waive the balance owed.  Safe-Guard declined Ms. Hinkle's claim because of delinquent payments, deferred payments, and late charges.  Safe-Guard notified Ms. Hinkle that her loan had been "re-amortized" to account for the delinquencies and deferrals.  Consequently, according to Safe-Guard, the loan balance subject to cancellation was $5,283.68, not $11,983.81, the former number being less than the $7,285.00 cash value already paid by State Farm.  Had the automobile loan been current in accordance with its original terms, the Hinkles would have realized approximately $2,000.00 following the accident.

10.     On July 20, 2012, Ms. Hinkle filed suit in the Circuit Court of Mingo County, alleging several claims against various defendants, including claims against Safe-Guard for unfair insurance claims settlement practices pursuant to the West Virginia Unfair Trade Practices Act ("UTPA"), common law bad faith and breach of contract.  A period of discovery ensued, after which Ms. Hinkle moved for partial summary judgment on the issue of whether Safe-Guard's GAP Insurance constituted "insurance" pursuant to W. Va. Code § 33-3-1, *et seq*.  In its Order denying the defendants' motions for summary judgment, the circuit court concluded:

> [16] The Court **FINDS** that no terms in the "GAP Insurance" agreement referenced a re-amortization of the loan or whether such amounts written off in the re-amortization are to be included as part of the Unpaid Net Balance.  The re-amortization of Plaintiff's loan following the automobile accident is a circumstance that gives rise to a patent ambiguity in the "GAP Insurance" agreement.

> [17] The Court **FINDS** that this patent ambiguity must be . . . strictly construed against Defendant Santander ("It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.* 356 S.E.2d 488 (W. Va. 1987)).  Although Defendant Santander is not an insurance company, for reasons discussed *infra*, "GAP Insurance" is insurance.

*Hinkle v. Matthews*, No. 12-C-202 (Cir. Ct. Mingo Cnty. Oct. 16, 2014), at 9-10.

11.     The Supreme Court of Appeals of West Virginia subsequently denied Safe-Guard's petition for a writ of prohibition, *see State ex rel. Safe-Guard Prods. Int'l, LLC v. Thompson*, 235 W. Va. 197, 772 S.E.2d 603 (2015), upholding the circuit court's ruling that the GAP Insurance product constituted insurance, and confirming that the vehicle salesman had sold the product on behalf of Safe-Guard.

12.     Following the Supreme Court's decision in *Thompson,* the circuit court granted Ms. Hinkle leave to amend her complaint to assert a class action on the existing claims against Safe-Guard, and to allege new claims under the West Virginia Consumer Credit and Protection Act ("CCPA"), W. Va. Code § 46A-1-101, *et seq.*, on behalf of all purchasers of Safe-Guard's GAP Insurance in West Virginia.  In her Amended Class Action Complaint, Ms. Hinkle alleged that Safe-Guard's sale of insurance and collection of premiums thereon was unlawful pursuant to W. Va. Code § 46A-2-127, because it had not complied with the licensing requirements of W. Va. Code § 33-3-1, *et seq.*  Ms. Hinkle also alleged that Safe-Guard violated W. Va. Code §§ 46A-6-102, 104 and 106 by engaging in unfair or deceptive practices.

13.     Thereafter, Safe-Guard removed the action to the federal district court for the Southern District of West Virginia, asserting as grounds therefor the applicable provision of the federal Class Action Fairness Act, 28 U.S.C. § 1453.

14.      West Virginia Code § 46A-2-127 (1997) provides, in pertinent part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> * * *
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding;

4

* * *

(g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges  when in fact such fees or charges may not legally be added to the existing obligation; and

(h) Any false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business.

15.     The CCPA defines "debt collector" as "any person or organization engaging directly or indirectly in debt collection."  *Id.* § 46A-2-122(d).  "Debt collection" includes, *inter alia*, "any action, conduct or practice . . . in the collection of claims owed or alleged to be owed or due by a consumer."  *Id.* § 46A-2-122(c).  A "claim" under the CCPA is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction."  *Id.* § 46A-2-122(b).

16.     Safe-Guard moved to dismiss the claims sounding in the unlawful sale of insurance and violations of the CCPA.  In so doing, Safe-Guard relied on West Virginia Code § 46A-1-105, which provides that the CCPA does not apply to "[t]he sale of insurance by an insurer, except as otherwise provided in this chapter."  Because Safe-Guard was considered an insurer following the *Thompson* decision, Safe-Guard asserted that the CCPA did not apply to it. Safe-Guard also argued that it was neither a "debt collector," nor in the business of "debt collection."  *See* W. Va. Code §§ 46A-2-122(c), -122(d).  Finally, Safe-Guard contended that there was no private right of recovery for violations of West Virginia Code § 33-3-1, *et seq.*, and West Virginia Code § 33-3-44, relating to the unlawful sale of insurance.

17.     Ms. Hinkle submitted a timely response to Safe-Guard's motion to dismiss, and Safe-Guard filed a reply brief in further support of its motion to dismiss.

18.     On July 19, 2016, the district court issued a Memorandum Opinion and Order (ECF No. 52), that granted Safe-Guard's motion to dismiss Ms. Hinkle's claims under the

CCPA, concluding that "none of the [CCPA] provisions relied upon are applicable to the sale of insurance." *Id.* at 6.

19.     The court ruled in addition that "there is no 'claim' at issue in this case on the facts alleged," because "Hinkle paid upfront for her GAP insurance coverage, and at no point was Safe-Guard the holder of 'any obligation or alleged obligation . . . to pay money arising out of the transaction.'"  ECF No. 52 at 7-8 (alteration omitted).  The Court reasoned that a CCPA "claim" is essentially identical to a "debt" within the meaning of the federal Fair Debt Collection Practices Act ("FDCPA"), the latter having been explained by one court of appeals as arising from a transaction "involving the offer or extension of credit to a consumer," where the consumer is extended the right to acquire goods or services for primarily household purposes "*and to defer payment*."  *Id.* at 8 (quoting *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168-69 (3d Cir. 1987) (emphasis in original)).

20.     The district court determined also that "[t]here can be no 'debt' under the FDCPA without a deferral of payment.  The court sees no reason that a 'claim' under the WVCCPA should not also require a deferral of payment.  Consequently, Safe-Guard has not been shown to have engaged in debt collection." ECF No. 52 at 9.

21.     The district court further held that the sale of insurance was not covered by the general consumer protections in Article 6 of the CCPA,  that " . . . chapter [46A] does not apply to  . . . [t]he sale of insurance by an insurer, except as otherwise provided in this chapter."  *See* W. Va. Code § 46A-1-105(a)(2).

22.     Upon receipt of the district court's Memorandum Opinion and Order, Ms. Hinkle filed a motion for reconsideration (ECF No. 53) pursuant to Federal Rule of Civil Procedure 54(b), maintaining that dismissal of the CCPA Article 2 claims was a clear error of law insofar as

6

the ruling rested on the *Zimmerman* rationale, which had subsequently been disavowed by its authoring court as dictum. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 401 (3d Cir. 2000).

23.   In accordance with the court's directions, Ms. Hinkle submitted a supplemental brief in support of her motion for reconsideration.  Safe-Guard filed a timely response.

24.   The district court took the motion for reconsideration under advisement, after which Ms. Hinkle moved, on March 13, 2017, to resolve the issues by certifying a proposed question to the Supreme Court of Appeals of West Virginia.  Safe-Guard responded in opposition to the motion for certification, indicating that, in the alternative, the proposed question should be reformulated.


Dated: October 19, 2017              Respectfully submitted,

                                     ROBIN L. HINKLE

                                         - and –

                                     SAFE-GUARD   PRODUCTS   INTERNATIONAL, LLC

By Counsel:

/s/ Raymond S. Franks II_____          /s/ Jeffrey D. Van Volkenburg
Jonathan R. Marshall (WVSB #10580)             James A. Varner, Sr. (WVSB #3853)
Sandra Henson Kinney (WVSB #6329)              Debra Tedeschi Varner (WVSB #6501)
Raymond S. Franks II (WVSB # 6523)             Jeffrey D. Van Volkenburg (WVSB #10227)
BAILEY & GLASSER, LLP                          McNEER,   HIGHLAND,   McMUNN   &
209 Capitol Street                             VARNER, L.C.
Charleston, WV 25301-2205                      Empire Building – 400 West Main Street
Telephone: (304) 345-6555                      P.O. Drawer 2040
Facsimile: (304) 342-1110                      Clarksburg, WV 26302-2040
jmarshall@baileyglasser.com                    Telephone: (304) 626-1100
rfranks@baileyglasser.com                      Facsimile: (304) 623-3035
                                               *Counsel for Defendant Safe-Guard*
                                               *Products International, LLC*

- and-

Howard M. Persinger, III (WVSB # 6943)
PERSINGER & PERSINGER, L.C.
237 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-9333
Facsimile: (304) 346-9337
hmp3@persingerlaw.com
*Counsel for Plaintiff Robin L. Hinkle*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**ROBIN L. HINKLE**, individually, and on behalf
of those similarly situated,

       *Plaintiff*,

v.

       Civil Action No. 2:15-cv-13856
       Hon. John T. Copenhaver, Jr.

**CASEY JOE MATTHEWS**; **TIMOTHY MAY**
and **CONNIE MAY**, husband and wife;
**SANTANDER CONSUMER, USA, INC.**, an
Illinois corporation; **SAFE-GUARD PRODUCTS
INTERNATIONAL, LLC**, a Georgia limited
liability company; and **JOHNNY HINKLE**,

       *Defendants*.

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that on this 19th day of October, 2017, this "Proposed Statement of Facts and Procedural History in Aid of Certification of Question to the Supreme Court of Appeals of West Virginia" was served upon Defendant Johnny Hinkle via U.S. Mail, and was served upon counsel of record through the CM/ECF System, which will notify the following CM/ECF participants:

Jeffrey D. Van Volkenburg, Esq.
McNEER, HIGHLAND, McMUNN &
VARNER, L.C.
Post Office Box 2040
Clarksburg, WV 26302
*Counsel for Defendant Safe-Guard
Products International, LLC*

Daniel J. Konrad, Esq.
DINSMORE & SHOHL
611 Third Avenue
Huntington, WV  25701
*Counsel for Defendant Santander
Consumer, USA, Inc.*

Johnny Hinkle
Post Office Box 134
Varney, WV 25696
*Defendant*

               */s/ Raymond S. Franks II*_____
               Raymond S. Franks II (WVSB # 6523)