UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROBIN L. HINKLE, individually
and on behalf of those similarly
situated,

      Plaintiff,

v.                                Civil Action No. 2:15-cv-13856

CASEY JOE MATTHEWS; TIMOTHY MAY
and CONNIE MAY, husband and wife;
SANTANDER CONSUMER, USA, INC., an
Illinois corporation; SAFE-GUARD
PRODUCTS INTERNATIONAL, LLC, a
Georgia limited liability
company; and JOHNNY HINKLE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is defendant Safe-Guard Products International, LLC's motion for summary judgment filed November 8, 2016.

### I.  Background

Plaintiff Robin L. Hinkle is a resident of Delbarton, West Virginia.  Am. Compl. ¶ 1.  Defendant Safe-Guard Products International, LLC ("Safe-Guard") is a Georgia limited liability company that offers Guaranteed Auto Protection ("GAP") insurance to vehicle purchasers in West Virginia.  Id. ¶¶ 5, 17.  In the event of an accident resulting in the total loss of a vehicle,

1

GAP insurance is generally used to cover any "gap" between the purchaser's outstanding balance owed on the automobile and the amount paid by the purchaser's primary insurer.  See id. ¶ 26 and see Mot. Summary Judgment, "ECF # 73," Ex. B, 1.

In July 2006, Johnny and Robin Hinkle[1] entered into a "Retail Installment Contract and Security Agreement" for the purchase of a vehicle from C&O Motors, Inc. of Saint Albans, West Virginia.  Id. ¶ 25.  The vehicle cost $20,552.70, of which the Hinkles financed $19,718.20 over a period of six years with an interest rate of 14.25%.  See ECF # 73, Ex. A, 2.  The Hinkles agreed to payment of monthly installments of $411.38, with a 5% late charge if a payment was more than ten days late. Id. at 1.

As part of that same transaction, the Hinkles purchased GAP insurance from Safe-Guard for $495.00, which they agreed to pay as part of the Retail Installment Contract and Security Agreement.  Id.  The terms of the GAP insurance addendum state:

> the Dealer/Assignee agrees to cancel a portion of the Customer's indebtedness in the event of a Total Loss of the Vehicle as defined herein.  The Deficiency Waiver Addendum will waive the amount equal to the

---

[1] Although the Hinkles have since divorced, they purchased the automobile together and are co-owners thereof.  Johnny Hinkle was named as a defendant in the complaint.  Am. Compl. ¶ 6.

2

> Unpaid Net Balance less the Actual Cash Value (ACV) of the vehicle, both as defined herein . . . [.]

Mot. Summary Judgment, "ECF # 73," Ex. B, 1. "Unpaid Net Balance" is defined as excluding, <u>inter alia</u>, "any and all . . . late charges, delinquent payments, deferred payments, uncollected service charges, . . . and penalty fees . . . [.]" <u>Id.</u> The GAP insurance addendum was sold to the Hinkles by C&O salesman Paul L. Waugh, who, according to Ms. Hinkle's affidavit, "led [Mr. and Ms. Hinkle] to believe that [they] were purchasing an insurance policy that would protect [them] from continuing to owe any outstanding balance still owed on the loan after a total loss, whatever the circumstances." Plaintiff's Mem. in Opposition, "ECF # 77," Ex. B, 3. Ms. Hinkle reviewed the Gap insurance addendum, which named both of the Hinkles, at the time of purchase and it was properly signed by Mr. Hinkle and the dealer. ECF # 73 Ex. B, 1; Ex. C, 43.

Shortly after purchasing the automobile, the Hinkles began falling behind on their payment schedule and accruing significant late fees. ECF # 73, Ex. C, 52-53. Approximately five years after the purchase, there was an accident which resulted in the Hinkles' automobile being considered a total loss. Based on the estimated cash value of the automobile, Ms. Hinkle's insurer, State Farm, issued a check in the amount of $7,285.00 to Santander Consumer USA Inc. ("Santander"), the

lienholder on the automobile. ECF # 73, Ex. D, 1. At the time of the accident, Hinkle had a payoff balance of $11,983.81, which included late charges and deferred payments. Am. Compl. ¶ 29; ECF # 73, Ex. E. When Santander sought to collect the remaining $4,698.81 not covered by State Farm's payment, Hinkle tried to invoke her Safe-Guard policy. Am. Compl. ¶¶ 29, 30. Safe-Guard denied her claim, evaluating her "Re-Amortized Balance at Date of Loss" at only $5,283.68 due to "inconsistencies in [Hinkle's] payment history, such as late payments[.]" ECF # 73, Ex. E. The State Farm payoff would have more than covered this amount, with a leftover "Negative Gap" of $2,001.32. Id. Accordingly, Safe-Guard found that no coverage was available.

Plaintiff filed her original complaint in the Circuit Court of Mingo County, bringing claims for breach of contract, common law bad faith, and violations of the West Virginia Unfair Trade Practices Act ("WVUTPA"), as well as separate counts for a declaratory judgment to recover benefits under the GAP contract and punitive damages. The complaint named Safe-Guard as a defendant, along with Santander (the assignee of plaintiff's car loan), three individuals involved in the car accident, and Johnny Hinkle. On October 16, 2014, the circuit court denied Santander's motion for summary judgment as to the breach of

contract, bad faith, WVUTPA, and punitive damages claims. See ECF # 77, Ex. A.

On March 11, 2015, the West Virginia Supreme Court of Appeals affirmed the circuit court's finding that the GAP policy was insurance. See State of West Virginia, ex rel. Safe-Guard Products Int'l, LLC, v. Thompson, 235 W. Va. 197 (2015).

On October 9, 2015, the case was removed to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453. Plaintiff filed her amended class action complaint on December 23, 2015. See ECF # 25. The new complaint contained class action claims for violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), which Safe-Guard moved to dismiss. The court dismissed those claims in an order entered on August 31, 2018. See ECF # 121. Safe-Guard now seeks summary judgment on the remaining claims for breach of contract, common law bad faith, unfair trade practices under the WVUTPA, declaratory judgment to recover benefits under the GAP contract, and punitive damages.[2]

---

[2] On October 5, 2015, prior to this case being removed, the Circuit Court of Mingo County entered an agreed partial dismissal order dismissing defendants Casey Joe Matthews, Timothy May, and Connie May. See ECF # 1 Ex. 4. Additionally, on November 15, 2018, this court granted final approval of Hinkle's class settlement with Santander and dismissed them from this action. See ECF # 130. No claims have been asserted

5

## II. Governing Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952

---

against Johnny Hinkle, and he has not made an appearance in this action.

F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

### III. Discussion

A. Law of the Case

As an initial matter, the court considers Hinkle's contention that the court should not decide the issues presented in Safe-Guard's motion because of the "law of the case" doctrine. Hinkle argues that since the Circuit Court of Mingo County already denied a motion for summary judgment filed by Santander, that the circuit court's ruling precludes this court from reconsidering any issues decided therein, including, inter alia, that the contract contained ambiguities. "The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Musacchio v. United States, 136 S. Ct. 709, 716 (2016) (quoting Pepper v. United States, 562 U.S. 476, 506 (2011)). The doctrine "directs a court's discretion, it does not limit the tribunal's power." Arizona v. California, 460 U.S. 605, 618 (1983).

Among other reasons, Hinkle's argument fails because the interlocutory motion for summary judgment by the state court does not constitute the law of the case. See Winchester Homes, Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053, 1059 n. 8 (4th Cir. 1994) ("The Supreme Court has indicated that 'it requires a final judgment to sustain the application of the rule of the law of the case just as it does for the kindred rule of res judicata.'")(quoting U.S. v. United States Smelting Co., 339 U.S. 186, 199 (1950)); see also Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("the denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing.").

Accordingly, the court does not rely on the previously-entered order by the Circuit Court of Mingo County, and conducts its own analysis herein.

B. Breach of Contract

In its motion for summary judgment, Safe-Guard claims that the terms of the contract are unambiguous and do not entitle Hinkle to relief as a matter of law. "When a court interprets an insurance policy, the '[l]anguage in an insurance policy should be given its plain, ordinary meaning.' . . . 'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or

interpretation, but full effect will be given to the plain meaning intended.'" Murray v. State Farm Fire & Cas. Co., 203 W. Va. 477, 482 (1998) (quoting Soliva v. Shand, Morahan & Co., Inc., 176 W.Va. 430 syl. pt.1 (1986) and Keffer v. Prudential Ins. Co. of America, 153 W.Va. 813, syl. (1970)).  However, "'[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.'"  Id. (quoting Prete v. Merchants Property Ins. Co. of Indiana, 159 W.Va. 508, syl. pt. 1 (1976)).  When the terms of an insurance contract are ambiguous, those "ambiguous terms . . . are to be strictly construed against the insurance company and in favor of the insured.'"  Chafin ex rel. Estate of Bradley v. Farmers & Mechanics Mut. Ins. Co. of W.Va., 232 W. Va. 245, 249 (2013) (quoting Nat'l Mut. Ins. Co. v. McMahon & Sons, 177 W.Va. 734, syl. Pt. 4 (1987)).

Hinkle contends that the GAP insurance addendum contained both patent and latent ambiguities that must be resolved in her favor.  Patent ambiguities occur "where the uncertainty as to meaning 'arises upon the words of the . . . instrument as looked at in themselves[,]'"  Ward v. Dixie Nat. Life Ins. Co., 257 F. App'x 620, 626 (4th Cir. 2007) (quoting

interpretation, but full effect will be given to the plain meaning intended.'" Murray v. State Farm Fire & Cas. Co., 203 W. Va. 477, 482 (1998) (quoting Soliva v. Shand, Morahan & Co., Inc., 176 W.Va. 430 syl. pt.1 (1986) and Keffer v. Prudential Ins. Co. of America, 153 W.Va. 813, syl. (1970)).  However, "'[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.'"  Id. (quoting Prete v. Merchants Property Ins. Co. of Indiana, 159 W.Va. 508, syl. pt. 1 (1976)).  When the terms of an insurance contract are ambiguous, those "ambiguous terms . . . are to be strictly construed against the insurance company and in favor of the insured.'"  Chafin ex rel. Estate of Bradley v. Farmers & Mechanics Mut. Ins. Co. of W.Va., 232 W. Va. 245, 249 (2013) (quoting Nat'l Mut. Ins. Co. v. McMahon & Sons, 177 W.Va. 734, syl. Pt. 4 (1987)).

Hinkle contends that the GAP insurance addendum contained both patent and latent ambiguities that must be resolved in her favor.  Patent ambiguities occur "where the uncertainty as to meaning 'arises upon the words of the . . . instrument as looked at in themselves[,]'"  Ward v. Dixie Nat. Life Ins. Co., 257 F. App'x 620, 626 (4th Cir. 2007) (quoting

Hann v. Carolina Cas. Ins. Co., 252 S.C. 518, 167 S.E.2d 420, 422 (1969)); "latent ambiguit[ies] arise[] when the instrument upon its face appears to be clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." Energy Dev. Corp. v. Moss, 214 W. Va. 577, 586 (2003) (quoting Collins v. Treat, 108 W.Va. 443, 446 (1930)).

Hinkle contends that "Unpaid Net Balance" as stated in the contract is both patently and latently ambiguous. Specifically, Hinkle argues that under "general parlance, 'Unpaid Net Balance' would describe the entire balance owed under the loan[.]" ECF # 77 at 12. Hinkle further argues that the use of the term "re-amortized" in Safe-Guard's claim denial as well as Mr. Waugh's representation of GAP insurance make the contract ambiguous.

In resolving the question of patent ambiguities first, the court finds Hinkle's arguments unconvincing. Hinkle acknowledges that "the small print definition of 'Unpaid Net Balance' is located on the back of the form," but omits the fact that when "Unpaid Net Balance" is first mentioned in the two-page addendum, it is qualified by "as defined herein." Id. and ECF # 73, Ex. B, 1. The definition therein states that late charges, delinquent payments and deferred payments, as well as penalty fees, are not covered by the GAP insurance. ECF # 73,

Ex. B.  While Hinkle may be correct regarding the general parlance of the words "unpaid net balance," the contract unambiguously defines its limitations.  The court finds that there is no reasonable interpretation of "Unpaid Net Balance" as used here that would include the "delinquent payments, deferred payments" she failed to make as well as the late charges and other fees acquired by Ms. Hinkle without contradicting the express terms of the contract.  Accordingly, there is no patent ambiguity in the contract.

The court also finds no latent ambiguity.  Hinkle argues that the use of the term "re-amortized" in Safe-Guard's correspondence denying coverage (ECF # 73, Ex. E) creates a latent ambiguity in the original contract.  The term "re-amortized" is not found in the contract; it is simply the term used by Safe-Guard to represent the act of calculating the insured's "Unpaid Net Balance."  It does not affect or in any way alter the unambiguous definition of "Unpaid Net Balance."

Finally, Hinkle argues that Paul Waugh, the salesperson at C&O Motors, created a latent ambiguity by "[leading the Hinkles] to believe that [they] were purchasing an insurance policy that would protect [them] from continuing to owe any outstanding balance still owed on the loan after a total loss, whatever the circumstances."  ECF # 77, Ex. B, 3.  Failing

to read a policy does not excuse the insured from its clear meaning. Am. States Ins. Co. v. Surbaugh, 231 W. Va. 288, 299 (2013) ("[i]nsurers are not required to sit beside a policy holder and force them to read (and ask if they understand) every provision in an insurance policy.") (quoting Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp., 197 Cal. App. 4th 1146, 1156 (2011)). Reliance on a salesperson's representations does not overcome the express written terms of a policy. See e.g., Mission, 197 Cal. App. at 1155 ("plaintiffs, 'having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. Their reliance on representations about what they were getting for their money was unjustified as a matter of law.'")(quoting Hadland v. NN Inv'rs Life Ins. Co., 24 Cal. App. 4th 1578, 1589 (1994)).

Waugh's alleged portrayal of the GAP policy, even if he did claim that coverage would be available "whatever the circumstances," does not render the unambiguous contract terms ambiguous. Had Hinkle read the terms of the contract, she would have known that the monthly payments she failed to make and certain late charges and other fees are not included in the term "Unpaid Net Balance." Indeed, common sense would tell one that a single premium GAP insurance policy would contemplate timely

monthly payments that would reduce the net unpaid balance as originally envisioned over the life of the agreement; no reasonable person would expect credit for one's own delinquency. Accordingly, the court gives full effect to the plain, unambiguous terms of the contract and finds that Safe-Guard acted in compliance therewith when it denied Ms. Hinkle's claim. Safe-Guard's motion for summary judgment on the breach of contract claim is granted.

The court further grants summary judgment on those claims dependent on the underlying breach of contract claim: common law bad faith and punitive damages[3]. See <u>Jordache Enterprises, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 204 W. Va. 465, 485, 513 S.E.2d 692, 712 (1998) ("A clear predicate to recovering punitive damages in a common law bad faith action wherein the policyholder alleges that the insurer knew the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim, is that the policyholder substantially prevail on the underlying contract claim.").

---

[3] The court also grants summary judgment for Count IIID, seeking a declaratory judgment, as it appears to be factually and legally duplicative of the breach of contract claim.

C.  West Virginia Unfair Trade Practices Act

Remaining are Hinkle's claims under the WVUTPA. Hinkle asserts the following violations:

> (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; and
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

Am. Compl. ¶ 39, corresponding to W. VA. Code § 33-11-4(9)(a)-(d). To allege violations of the WVUTPA, a plaintiff "must establish that the insurance company had a 'general business practice' of committing unfair claim settlement practices and that the breach of the law was not an isolated event." Barefield v. DPIC Companies, Inc., 215 W. Va. 544, 552 (2004). "[T]he evidence should establish that . . . the violations arise from separate, discrete acts or omissions in the claim settlement[.]" Id.

Hinkle appears to rely on two events to establish Safe-Guard's general business practice and liability under the WVUTPA: first, that Mr. Waugh misrepresented the nature of the GAP insurance, and second, that Safe-Guard improperly handled

14

her claim.  Neither event establishes a WVUTPA claim.  Mr. Waugh's alleged statement, that coverage would be available "whatever the circumstances," does not negate the unambiguous terms of the contract.  Even if it did, Ms. Hinkle presents no evidence indicating that this alleged misrepresentation of coverage was more than an isolated event.  Further, as already discussed, plaintiff's claim was properly denied under the terms of the contract.  The evidence shows that Safe-Guard acted reasonably promptly (within the fifteen-day requirement of W. Va. Code § 33-11-4(9)(o)) in denying the claim.  See ECF # 73, Ex. E (Safe-Guard correspondence dated July 21, 2011), and see ECF # 73, Ex. I, 2 (noting "CLAIM COMPLETE" on July 6, 2011). By calculating the unpaid net balance and subtracting from that amount the actual cash value as provided by State Farm, Safe-Guard fulfilled its contractual obligation and conducted a reasonable investigation to settle the claim.  ECF # 73, Ex. E. Accordingly, there is no genuine dispute of material fact that could entitle Hinkle to recovery under her WVUTPA claim.  Safe-Guard's motion for summary judgment on those claims is granted.

## IV.  Conclusion

For the foregoing reasons, it is ORDERED that defendant Safe-Guard's motion for summary judgment be, and it hereby is, granted.

There being no remaining issue for resolution in the above-styled case, it is further ORDERED that this case be, and hereby is, dismissed.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 25, 2019

John T. Copenhaver, Jr.
Senior United States District Judge